12-3007 United States of America v. Khaled Mohammed Shabban Also known as Khaled Shabban Also known as Khaled Mohammed Rashid Shabban Also known as Mohammed Rashid Khalid Also known as Khaled Mohammed Rashad Mohammed Mahmoud Shabban Also known as Khaled Rashad Appellant Ms. Rowland for the Appellant Mr. Sable for the Appellant Good morning. We're going to call in Mr. Shabban. Is that okay? I wasn't expecting that dramatic introduction. Good morning. May it please the Court. The jury never learned the precise nature and the degree of the problems that motivated Mr. Shabban to remove his son to Egypt. At the hearing on ineffective assistance of counsel, Mr. Shabban offered evidence in his affidavit that his son's teacher and the social worker would have testified that the child suffered from lingual silence and expressive defects. They would have testified that the child had no friends and was severely introverted. Did he offer anything from the perspective of witnesses themselves? No. Why not? Because it wasn't necessary. He offered his own affidavit. The government did not cross-examine him on the matters appeared in his affidavit. Do we have law on what's expected in that setting? What sort of perspective showing is to be made? Well, it's certainly his burden to show that trial counsel was defective and that there's a reasonable probability. When the claim is that the trial counsel was defective for failure to call a witness, do we have any law in terms of what sort of showing is to be made there? What kind of proof is required? I'm not aware of any law. Mr. Shabban did offer his affidavit. The government offered the affidavit of trial counsel, which was cross-examined, which did not dispute the specific allegations but only made general claims that the testimony of the school personnel would have been unfavorable to Mr. Shabban and the teacher's opinion that he didn't need to leave. And that's what the district court found, right? That the teacher's testimony would not have helped Mr. Shabban. Is that right? That it would have been unfavorable, yes. And what's the standard of our review for that finding? The court has not settled the standard of review in these kinds of cases where there are mixed questions of law and fact, which are sometimes reviewed de novo and sometimes reviewed for an abuse of discretion. Other circuits, and we set cases in our brief, have held that it is de novo review, and we urge that on the court. Ms. Roland, there's a separate question about the relevance or the materiality of the evidence, even assuming that it's appropriately proffered, which is, it seems like Mr. Shabban's position is that he was acting in the best interests of his son, but isn't the standard for us whether he knowingly and intentionally took the child out of the country in contravention of the child's mother's custodial rights? And it seems that as long as that finding stands, it doesn't really matter what additional evidence there may be on Mr. Shabban's additional intent to advance his son's interests. At trial, the jury needed to determine whether he intended to obstruct the mother's parental rights. And our argument is that this evidence would have undermined the government's proof of that by showing that he acted with a different motivation, a different intent. Didn't Judge Garland address that in the earlier opinion, making the point that there's nothing inconsistent between an intention to help the child, whatever difficulty that was having, and to do the acts which would violate the statute? Yes, and Judge Garland and the panel found that the evidence was sufficient to support the conviction. Nevertheless... I'm making a broader point, which is that Judge Garland's opinion made, essentially the point just made by Judge Pillard, that the proof of all the most ardent desire to help the child in the world doesn't in any way contradict the intention that the government has to prove. In some respects, one might say it makes it more probable that he had that intent. His motive, let's assume, was totally pure, but his intent, the more ardent he was in his motive, the more likely he is to have had the intent. His job at the trial, and his attorney's job, was to poke holes in the government's case. Well, as a practical matter, I think it was to render the defendant a highly sympathetic character, to be honest. And having the testimony of the mother, I should think corroborating the idea that he was very concerned about his child's learning difficulties, would go just about as far as one could possibly go in that direction. There was testimony from the victim, and there was testimony about his post-arrest statements. I think those are very different than the very specific and powerful nature and degree of the problem that the teacher and the social worker would have testified to. They would have testified, and he presented evidence at the hearing, that they couldn't control the child and requested him to chaperone the child. He interfered with the custodial rights of the mother. What in the world does the intensity of his concern about the learning problems of his son have to do with that? Because it undermines proof that his intention was to obstruct by suggesting that his intention was something else. He can't have both intentions? He can't have dual intentions here? Well, of course he can, but the jury could also find that he intended to help his son. So your suggestion is that there's a reasonable probability that if that evidence had been brought in, the testimony of the teacher and the social worker, reasonable probability that the jury would then have said, oh, he did not intend to interfere with the custodial rights of the mother. That's what you have to show, right? Reasonable probability? Yes. That the jury would say, oh, he didn't intend to interfere with the custodial rights of the mother. No, we don't need to show that. We need to show a reasonable probability that the jury would have had a reasonable doubt. Not that they would have had to find a case of innocence, but that they would have had to doubt whether he had a reasonable doubt that he intended to interfere. Certainly his conduct interfered, but the question is, what were his intentions? And if his intentions, if there's a reasonable doubt. What do we make of the findings that he had all these conversations where he acknowledged that what he was doing would upset the mother, and that he used deception, he lied to her about what he was doing? How are we supposed to put that in the mix? I think that that evidence goes toward the sufficiency of the evidence supporting the conviction, and the court has found that it was sufficient. It doesn't necessarily completely undermine his argument, and the argument he wanted to make to the jury, that he intended to help his son. And the consequence of that, that was the mother's parental rights were obstructed. So I just need to make sure I understand, your argument is if this evidence had come in, there's a reasonable probability that the jury would have had reasonable doubt that he intended to interfere with the custody rights of the mother? Yes. We asked the court to remand the case to the district court with instructions to vacate the conviction and commence a new trial. Can I just ask a question? The sentence was 36 months. Yes. And I guess it was imposed in 2009 or 2010? Yes. He's out now. He was out during the first appeal. I see, okay. Yes. And he's living in Saudi Arabia, which is why he participated in the hearing by telephone. Unless the court has further questions, I'll reserve the remainder of my time for a rebuttal argument. Thank you. Good morning. May it please the court, David Sable on behalf of the United States. And I should note that collateral counsel for the government, Ms. Carolyn Colvin, has strep throat and wasn't able to be here today. A couple points based on the discussion with the counsel. First of all, Your Honor, you asked whether we have any law on the showing that appellant has to make in the event of an allegation of failure to properly investigate a case. And this court said in Askew and repeated again in Gwin more recently, that in that kind of case, appellant has to make a, quote, unquote, comprehensive showing of what the evidence would have been. Has to say precisely, quote, unquote, what the evidence would have been and then how he or she was prejudiced by that evidence. And Judge Hogan, in this case, at 205 of the appendix, quoted Askew and those sections in detail in making his findings. He was very well aware of why, in this case, appellant had not put forward any evidence from the social worker or the teacher. And he made a point of saying the teacher's testimony would have been unfavorable based on what the trial counsel said. And the social worker's testimony came in. The only evidence about what the social worker would have said actually came in at trial through the mother, who said what the social worker told her. And so that's the burden that appellant has, and that's the burden that he didn't meet in this case. You also asked about- I just sort of, as a matter of process, is it sufficient to submit the affidavit from the trial counsel saying what these folks might have said? Or should you put the witnesses- should you have something from the witnesses themselves? Well, absolutely, you have to have something from the witnesses themselves. And the government submitted the affidavit from the trial counsel. Oh, that's right. And what the appellant submitted a pleading responding to each of the responses in the trial counsel's affidavit. And because he was in Saudi Arabia, he was permitted to adopt that as his testimony. And there was no cross-examination. So there was never any teasing out of, well, appellant made some allegations here. They're unattributed. Was this what the teacher would have said? Is this what the social worker would have said? There's nothing in the record about what these two witnesses would have said or how it could have prejudiced him not to call those witnesses. All we know is that the trial counsel said, I interviewed- I had two witnesses at the school interviewed. Their testimony would have been unfavorable.  And the government had 31 recorded phone calls between my client and the mother, in which my client is telling why he took the child to Egypt. I thought the best way to get my case in was to move in limine under the rule of completeness to get that testimony in in the government's case in chief. Then my client doesn't have to testify and answer questions that he can't answer. Then I don't have to call personnel from the school who are going to offer opinions that are going to hurt my client, like the kid was doing well. The kid didn't need to go to Egypt for trial testimony. So I got my case in that way. And then on cross-examination of the mother, he was able to elicit that, hey, the appellant told the mother, the child is doing well in Egypt. I will bring the child back. And he, in fact, did bring the child back. That permitted him to argue that, look, ladies and gentlemen, my client was just trying to help his son. He was concerned. He was a concerned parent. He panicked. He took the child to Egypt. And he had no intent to actually obstruct the mother's rights. It's not a completely logical defense, but it was a jury argument that the jury heard. And as the trial court found, there was no question that all this evidence was in front of the jury. Just on the proffer question, Mr. Sable, if these two witnesses were unwilling, for example, to give a declaration themselves, is it your position that they would have had to be deposed in order to support the ineffective assistance claim? That's an interesting question. I don't have an answer to that. Certainly there's an obligation to make a comprehensive showing. Certainly counsel had at the evidentiary hearing and certainly at the trial, counsel had the court's tools at her disposal, could have had them testify at the hearing. There's no reason to think, there's nothing in the record to suggest that these witnesses wouldn't have been available. Certainly one gave a statement to the investigator without any kind of court process the first time. There's no reason to think that she wouldn't have come back to the evidentiary hearing. And we just don't know anything about the social worker. So the record was not made, Your Honor. And what this court, again, said and asked you was you have an obligation to show, to tell the court what the evidence would have shown. You can't just throw out teasingly some information and say, hey, there would have been prejudice. You have to put flesh on the bones. And that wasn't done here. But in any event, the trial court's focus was not to say so much on process. The trial court said, look, I'm going to say that what appellant said in his pleading would have come out at trial. And this would not have made any difference. It wouldn't have made any difference because there was no question that the child had communication difficulties. There was no question that dad took the child to Egypt to help him out and intended to bring him back. But that really wasn't the point. The point was that we had evidence of lying, of subterfuge, and the jury heard this evidence and the jury rejected it. And I find that it wouldn't have made a difference if the teacher and the social worker had testified. And that was not an erroneous finding under any standard. Just out of curiosity, is it typical that a parent who defeats another parent's custodial rights in this way actually serves time in prison? I can't answer that question. I know that we did some research. There aren't a lot of cases here on the application of this statute. And so I can't answer your court's question. If there's nothing further, we'll submit and ask that the judgment of the court be affirmed. Thank you. With regard to the government's argument that there was nothing in the record, the record is made at page 76 of the appellant's brief, where Mr. Zhaban provided evidence of precisely what the teacher and social worker would have tested. To the extent that that was not teased out, that is the government's problem for not examining him. And I would argue that it's really the government's witness who was imprecise by offering testimony simply that their testimony would not have been favorable. If the court has no further questions, we will submit on the record. Thank you. The case is submitted.
judges: Griffith, Pillard, Williams